```
                    UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NORTH CAROLINA
                          WESTERN DIVISION



UNITED STATES OF AMERICA,- Docket No. 4:21-cr-52-FL-1
                         -
Plaintiff,               - New Bern, North Carolina
                         - December 8, 2022
v.                       - Sentencing
                         -
DWAYNE DANTEL THOMAS,    -
                         -
Defendant.               -
--------------------------------------------------------------


           PUBLIC TRANSCRIPT OF SENTENCING HEARING
         BEFORE THE HONORABLE LOUISE WOOD FLANAGAN
               UNITED STATES DISTRICT JUDGE.

             (PURSUANT TO STANDING ORDER 22-SO-1,
PORTIONS OF ALL CHANGE OF PLEA AND SENTENCING
TRANSCRIPTS ARE RESTRICTED)


APPEARANCES:

For the Plaintiffs:     United States Attorneys' Office
                        By:  Chad E. Rhoades
                        150 Fayetteville St, Ste 2100
                        Raleigh, NC 27601
                        (919) 856-4500

For the Defendant:      Greene, Crow & Smith, PA
                        By: Kelly Latham Greene
                        401 Middle Street
                        New Bern, NC 28560
                        (252) 634-9400

Court Reporter:         Kendyl Trent, CVR-CM
                        P.O. Box 86
                        Tarboro, NC 27886
                        (252) 824-3280


Proceedings recorded by voice stenography, transcript
produced by notereading.
```

```
1                    (Commenced at 10:42 a.m.)
2                    THE COURT:  All right.  Well, let's look
3    forward now to your case, Mr. Greene, of Dwayne Thomas.
4                    Good morning, Mr. Thomas.  My name is Judge
5    Flanagan.  This is the time the Court set aside to
6    sentence you for conspiring to distribute fentanyl, and
7    possessing methamphetamine, cocaine, fentanyl, and heroin
8    and a firearm in furtherance of drug trafficking.  A
9    crime  that -- have you read the presentence report?
10                   THE DEFENDANT:  Yes, ma'am.
11                   THE COURT:  Good.  And you had enough time
12   to talk with Mr. Greene to be ready to be sentenced
13   today?
14                   THE DEFENDANT:  Yes, ma'am.
15                   THE COURT:  All right.  I'm familiar with
16   the offense conduct.  Criminal history is somewhat
17   lengthy but you're only in criminal history category II.
18   And it's brought to my attention that the presentence
19   report is perhaps the basis for the Court thinking about
20   an upward departure but I got a thoughtful memo from
21   Mr. Greene.  And he's arguing, among other things, due to
22   your health history a low end of the guideline sentence.
23                   The guideline sentence is recommended to me
24   somewhere between 78 to 97 months on Counts One and Four.
25   And I don't have a choice other than to sentence you to
```

at least five years consecutive on the gun charge.  You
face up to 20 years in prison on Count Four and 40 years
on Count One.

What does the Government think is a
sentence that's sufficient but not more than what it
needs to be?

You can be seated.

MR. RHOADES:  Thank you, Your Honor.
Recognizing all the factors that the Court needs to
consider, we'd recommend a sentence from the top end of
the guidelines in this case.  You know, there are several
components to this case that were very troubling to the
Government.  And I think the Court would agree.

And this deals with an individual who is
dealing very dangerous drugs that have taken the lives of
many people.  And held accountable for quite a large
quantity of illicit drugs in this case.  Knowing that,
Your Honor, it's criminally dangerous when someone is
engaged in this type of behavior to possess firearms.

As this Court knows what those firearms do
for cases like this.  It's not just about possessing a
firearm but possessing that firearm for protection.  And
oftentimes that leaves them and their families vulnerable
because people know they're soft targets because they're
drug dealers.  It's the combination of this and this

conduct is extremely troubling.

Looking at his history and characteristics, you know, he doesn't have a significant criminal history that's scored. But I think what we see here is conduct that is truly escalating. Because his criminal history starts at age 16 and continues until the incident offense. Your Honor, I think what's also noteworthy is when we're looking at people who come into this court, we see people typically on the younger end, they're, you know, in their 20s and sometimes in their 30s.

But this criminal conduct is occurring in late 30s and early 40s. And I think that's a sign that -- of an individual who should know better. He's had the opportunity to engage in work. He has done some in the past but he's chosen a life that's much different than what he's capable of living in normal society. So again, all these factors that we've given, the danger that he is in the community, I think a sentence from the top end of the guidelines would be appropriate in this case.

THE COURT: Can you remind me how he may have used his minor children in his drug operations?

MR. RHOADES: Your Honor, that -- from what I understand is, you know, when we're considering a plea and considering stipulations we have to consider where the source is coming from and if we can corroborate it.

A lot of the information contained in the investigative material, such as, you know, his wife being a part of the organization, that he had distributed drugs, was corroborated by independent surveillance or some other means. Here we had a statement made by a confidential informant that -- that they may have been used at some point but there was no corroboration behind that.

THE COURT: Okay. All right.

MR. RHOADES: Thank you, Your Honor.

THE COURT: Thank you. Mr. Greene.

MR. GREENE: Thank you, Judge Flanagan. Judge, we have this sentencing memorandum and we are in this case asking and we think appropriate based on the facts in this case the low end of the guidelines. Judge, responding to the Government's position about what the appropriate sentence would be I'd ask the Court to consider these things.

Number One, is I certainly, and we all agree that the type of drugs -- all drugs but in particular these drugs are very dangerous to society. But that has been taken into consideration in the guidelines. Also the criminal history, that has been taken into the guideline calculation of his criminal history.

And I would, Judge, in looking at the

1  charges, his history, I recognize that in 2017 it was a
2  felony drug charge that ultimately was dismissed pursuant
3  to a 9096.  And then the next drug charge of significance
4  was when he was 20 years old.  And that charge ultimately
5  was dismissed as well.  So does he have a prior history
6  of drugs in the criminal system?  Yes.  However, what the
7  record indicates is that when he was 20, which was many
8  years ago, and then, yes, more recently at 37.  Based on
9  the State law those cases were ultimately dismissed, both
10 of them.
11             And, again, I'm not trying to minimize it.
12 But, Judge, I'm asking the Court to consider the things
13 set forth in our sentencing memorandum and also these
14 things.  His health.  He's diabetic.  Has some other
15 significant health concerns that I would ask the Court to
16 consider in mitigation or to consider in order for the
17 Court to consider the low end of the guideline range.
18             THE COURT:  Did you want to make an oral
19 motion to seal your sentencing memorandum?
20             MR. GREENE:  I would ask that, Judge.  And
21 I want to tell the Court this.  My client asked when we
22 talked about this to seal the courtroom.  But I am just
23 referring to the -- I told him that I was going to just
24 refer specifically to health issues and ask the Court to
25 review what we have on filed.  And yes.  I would ask that

|   |   |
|---|---|
| 1 | it be placed under seal. |
| 2 | THE COURT: Because I noticed it wasn't. |
| 3 | All right. The oral motion, Madam Clerk, is allowed and |
| 4 | the Docket Entry Number 44 now will be sealed. |
| 5 | MR. GREENE: Thank you, Your Honor. So in |
| 6 | things in consideration is his health, which we're also |
| 7 | going to ask the Court to recommend another facility |
| 8 | where he can get the treatment that he needs for those |
| 9 | health -- |
| 10 | THE COURT: I'm not sure he really needs to |
| 11 | go to a medical facility but -- |
| 12 | MR. GREENE: But some type of consideration |
| 13 | of the Court whether it's Butner or just in the judgment |
| 14 | that -- |
| 15 | THE COURT: Okay. |
| 16 | MR. GREENE: -- this needs to be addressed. |
| 17 | Judge, also is that he has, you know, he comes to you |
| 18 | with -- got kicked out in the tenth grade. He desires |
| 19 | GED. He would like, as he's indicated to probation, he's |
| 20 | indicated to us, he'd like to further his education while |
| 21 | he's in custody. |
| 22 | He comes to you as he sits here today with |
| 23 | seven biological children. And prior to his arrest he |
| 24 | was financially supporting them and was part of their |
| 25 | life. He also comes to you today, Judge, with family in |

1  the courtroom. His mother and his stepfather and a child
2  are here. His family has been very supportive of him.
3              Judge, and also I don't know if this plays
4  any role in how the Court looks at this case but this --
5  sometimes it's always good in these situations in this
6  court to get a second opinion. And this case was set for
7  trial. And then he asked for a second opinion. We got
8  involved in the case and now we've been able to avoid a
9  trial. And that's good for him and it's good for -- it
10 just shows the Court his willingness to accept
11 responsibility. And he will -- he acknowledges that,
12 Judge.
13             That this is -- I mean, the Court makes
14 reference to possibly his children being involved. He
15 adamantly denies that with respect to the comments of the
16 Government as far as the truth of that. But that is --
17 certainly when we got this case that was a concern. That
18 we read on paper but I think that the facts and
19 circumstances of that don't suggest that's, in fact, what
20 happened. But I certainly understand the Court's concern
21 about that.
22             Judge, we think that a sufficient sentence
23 would, in fact, be in the low end of the guideline range
24 based on all of the circumstances set forth in this. My
25 client has a -- well, he's had a drug problem. He

indicates that his drug addiction consists of, as set forth in the presentencing report, heroin and pills. He's obviously used other drugs but indicated to probation that he's not addicted to those things but has used them. But he was honest in his report to probation and this report.

Judge, a low-end sentence is appropriate. He's asking the Court to consider -- well, he's asking the Court to allow him vocational training. And also based on his depression set forth in our memo, psychological services and treatment so that he can deal with those while he's in prison. And also, I know I already mentioned it but education. Those are the things that he would like. And he would like to be close to his family if it's possible.

Judge, he's been very concerned about his case obviously but he's been easy to work with. We work together well. He's very polite. And so we would ask the Court based on the factors for a low-end sentence.

THE COURT: Okay. Thank you. Would your client like to say anything?

THE DEFENDANT: I understand. I just want to say I accept responsibility and everything. But as far as about having the kids selling drugs, that ain't true.

1                    THE COURT: Okay. Well, you are a long-
2     time drug dealer and there's a need to protect the
3     public. This is such dangerous activity. It kills
4     people. It tears apart families. It frays the edges of
5     communities. And when you add a weapon into this drug
6     dealing activity, the opportunities to commit even more
7     harm rise so quickly. There's a need to promote respect
8     for the law in addition to discouraging misconduct. And
9     there's a need for treatment.
10                   I don't see any need to go outside the
11    guideline range but I think this range is appropriate for
12    the Court to look into and to find a sentence. And I
13    don't think I need to go to the top of the range as the
14    Government argues but I don't believe the very bottom is
15    appropriate either. I think a total sentence of 144
16    months, that's 12 years. I think that's appropriate.
17                   That'll be five years consecutive on Count
18    Five and 84 months on Counts One and Four to run
19    together. Creating a total term of incarceration of 144
20    months. You'll be supervised for five years on Count One
21    and Five and three years on Count Four. I'll run all of
22    that together. Before I address your conditions of
23    supervision let me take a step back.
24                   Recommend you to Butner. I will put in the
25    judgment somewhere with note regarding defendant's

1  concerning medical issues and that should be fine,
2  Mr. Greene, don't you think?
3                  MR. GREENE:  I agree.
4                  THE COURT:  Okay.  So that'll be somewhere
5  on the judgment.  And then I'm going to add mental health
6  treatment.  I understand there's some depression.  I can
7  appreciate that there are mental health issues and so I'm
8  going to recommend the Bureau undertake a comprehensive
9  mental health assessment of you and any mental health
10 treatment that can be provided.
11                 I'm going to add a couple of other
12 recommendations.  I'm going to recommend you for the most
13 intensive treatment program for addiction.  And I'd like
14 to see you get your GED.  You haven't done that yet, have
15 you?
16                 THE DEFENDANT:  No, ma'am.
17                 THE COURT:  Any reason why you can't?
18                 THE DEFENDANT:  No.  I want to get it.
19                 THE COURT:  Okay.  Let me recommend further
20 education and vocational training.  I'd like to see you
21 get it too.  And I understand if you can get it in the
22 prison system it will provide you with some additional
23 opportunities for employment in the prison system and for
24 getting more education.  All right.
25                 Now let's get back to supervised release.

I talked about the number of years. Let me now break it down into three different categories. First and foremost, I want you to be a drug dealer that understands when I say this. Because there are drug dealers out there that I've sentenced two or three times. They don't seem to get it.

You can't possess any drugs. And you can't possess a weapon. And you can't break any law. If you do, that will be a violation of supervised release in addition to whatever law or laws were at issue. And what that would mean in this case is you'd go back to prison in this case in addition to whatever punishment you would face. Any questions about that?

THE DEFENDANT: No, ma'am.

THE COURT: So I see drug dealers, as I've said, either I or my colleagues have sentenced them before and there's some that come into this courtroom for their third federal drug sentence. There's going to be pressure on you when you get out of prison.

People are used to, I have a strong feeling, you buying them things with money that you've gained from selling drugs. And you surely have bought yourself things with drug money. And let you know now, as I hope you know, and let those that may ask you for things know, there's nothing that you buy with drug money

that's worth anybody having.

So you're no good to anybody when you get out of prison unless you're good to yourself. And that means not being around drug dealers, changing your friends, changing where you go. And not thinking that you're a failure because you can't buy somebody something except with money you earn lawfully. And that's when it's worth having.

All right. There's some standard conditions in this district. So I'm moving now to the second category. And May of last year we formalized our standard conditions and these are things that I tell defendants you should be doing anyway. I've already mentioned one. Don't be around people breaking the law. Don't lie to your probation officer.

Work full-time if you can. I know you're on disability so, you know, that probably we're not going to make you work full-time if you're disabled. But don't wake up in the middle of the night and move someplace without us, through the probation office, approving in advance where you're going. These are things you should be doing anyway.

And then finally there's some special conditions for you. First and foremost, drug testing and treatment. Let's keep up with mental health treatment.

1   If you want more education and vocational training,
2   that's a great thing.  I want you to have it.  As for a
3   special condition, the fourth is you're going to
4   cooperate with collection of DNA.  I'm not sure how
5   special that really is because everybody's got to do it
6   in your situation.
7               But you will consent, because of your
8   background and history and the need to effectively
9   supervise you, to warrantless searches of your person,
10  your car, your home.  So warrantless searches by
11  probation or by law enforcement but only if there's a
12  reasonable cause or reasonable suspicion to think that
13  you're not doing what you're supposed to be doing.  That
14  you're breaking the law or violating supervised release.
15  So if you are doing what you're supposed to be doing
16  there's not going to be any problem.
17              And sometimes the probation office has to
18  supervise in the regular course -- well, they always have
19  to supervise but sometimes they have to search you in the
20  regular course of their lawful duties.  You'll agree to
21  that without a warrant.  Nobody's trying to harass.
22  Really it's a chance for you to show you're doing what
23  you're supposed to be doing.  And we all want to
24  celebrate that.
25              And at the end of the day, it's up to you

and the decisions you make. Let me tell you, your probation officer's going to be a lot of help to you. So go into that relationship with that perspective. They really do want to see you succeed.

There's a $300 special assessment. There's no fine because I don't think you could pay a fine. You've got these dependents. You probably don't need any more than what you've got already. Because you've got a lot to take care of, don't you?

THE DEFENDANT: Yes, ma'am.

THE COURT: All right. Well, support them lawfully. All right. I'm not going to deny you federal benefits. I'm going to dismiss the other Counts against you. I'm going to sign this order for forfeiture. But before I make all this final, anything from the Government's perspective?

MR. RHOADES: No, Your Honor. Thank you.

THE COURT: Okay. Mr. Cantafio, you have any changes recommended by your office to comply with relevant sentencing law?

THE PROBATION OFFICER: Nothing further, Your Honor.

THE COURT: Thank you very much. All right. Mr. Greene, is there anything that you would ask me to consider before I tell your client how to make an

```
 1  appeal?
 2              MR. GREENE:  No, Your Honor.
 3              THE COURT:  All right.  Mr. Thomas, you can
 4  appeal.  You did enter into a plea agreement that had
 5  waivers in there of rights to appeal.  I know you know
 6  that.  And these waivers are generally enforceable but if
 7  you think they are not, you can present your theory to
 8  the Court above.
 9              Move quickly because you've only got 14
10  days from the date that the judgment goes on the docket
11  to do that.  If you can't afford the cost of an appeal,
12  you can apply for permission to appeal for free.  And if
13  you request, the clerk will fill out the appeal paperwork
14  for you.  You will get credit for time served.  And in
15  the federal system your good behavior in custody can take
16  almost two months a year off the sentence.
17              Does your client have any questions about
18  his appeal rights?
19              MR. GREENE:  No, Your Honor.
20              THE COURT:  All right.  Thank you very
21  much.
22              MR. GREENE:  Thank you, Your Honor.
23              THE COURT:  You're welcome.
24              (Concluded at 10:03 a.m.)
25                                        - - -
```

1 **C E R T I F I C A T E**
2
3     I certify that the foregoing is a correct transcript
4 from the record of proceedings in the above-entitled
5 matter.
6
7 /s/ Kendyl Trent                                    2/21/2023
8 Kendyl Trent, CVR-CM                                     Date